(C. D. 121)

Atlas Waste Mfg. Co. et al. v. United States

United States Customs Court, Third Division

(Decided March 9, 1939)

*Strauss & Hedges* (*Eugene F. Blauvelt* of counsel) for the plaintiffs.
*Joseph R. Jackson*, Assistant Attorney General (*Joseph F. Donohue* and *Charles J. Miville*, special attorneys), for the defendant.

Before Cline, Evans, and Keefe, Judges

Evans, Judge: This is an action against the United States in which the plaintiffs seek to recover money claimed to have been assessed in excess of the amount due upon importations of merchandise which the collector of customs at the port of entry described as waste, not specially provided for, and the plaintiffs claim is silk waste. Three cases were consolidated for trial. Assessment was made at the rate of 10 per centum ad valorem under paragraph 1555 of the Tariff Act of 1930, and free entry is claimed under paragraph 1762 of the same law.

For convenience of reference we set forth the respective paragraphs of the act as follows:

Par. 1555. Waste, not specially provided for, 10 per centum ad valorem.
Par. 1762. Silk cocoons and silk waste.

The issue before us is whether the imported commodity is waste, not specially provided for, or silk waste, within the meaning of the latter term as used in the tariff act.

A sample of the merchandise was produced in evidence. It is described by one of the witnesses as a "wadding waste." He stated his experience with this type of commodity in the Orient in 1919. He described the commodity as follows:

This stock comes from old garments that are worn by the Orientals. They are kimonas, jackets, or trousers. It is the wadding, as termed, in between two pieces of cloth. These old garments are gathered in a godown, which is termed as a warehouse here. The Chinese, or whatever labor they have, select this and tear the cloth from it, and segregate the different grades of this silk waste, which was formerly from cocoons, into different piles of the superior, No. 1 and No. 2 grade. This particular stock is a No. 1 grade for the simple reason they have removed a lighter stock which is produced. It is a lighter stock in color and has

less defects than this No. 1. This No. 1 is better than the No. 2 inasmuch as the No. 2 contains considerable defects, and these defects are various pieces of cloth, canvas, leather—we have even found some bread crust in them. In order words, it is a motley mixture. It is sold as wadding waste. The technical term is known as wadding waste   *   *   *.

The attorney for the Government stated that he questioned this witness on the point of the identification of this merchandise with that which the witness had seen produced, and that the statement of the witness was that the merchandise he had seen produced in China is substantially similar to this merchandise, this statement being based upon this twenty-five years' experience.

The plaintiffs introduced the testimony of two witnesses. The first witness, Mr. Irving Horowitz, stated that for the past twenty-five years he has been buying and selling textile fibers, silk, rayon, cotton, wool, and synthetic fibers of all kinds; that he deals in waste fibers; that Exhibit 1 herein, the imported commodity, is composed of various silk waste fibers and that it is all pure silk. On cross-examination he stated that he had purchased material like Exhibit 1 in foreign countries, that it is silk waste, but he admitted that he had not seen the materials from which it is taken. When asked to define silk waste as he used the term, this witness answered as follows:

It is a silk fiber which at one time or another has come from the silk cocoon. That is how we would classify it in our field. A silk waste is a silk waste which has no foreign fibers, any vegetable or wool content of any kind.   .

He also stated that there are other types of silk waste, silk waste taken from the cocoon and that taken from various processes of weaving and spinning; that Exhibit 1 was originally the waste of the spinning process. However, he admitted that he did not know to what further processes it had been subjected.

The second witness for the plaintiffs, Mr. Joseph R. Benson, an employee and salesman in charge of all silk waste material for the Atlas Waste Manufacturing Co., stated that he had been familiar with merchandise of the character of Exhibit 1 for twenty-five years and based upon that experience he characterized the commodity as silk. This witness defined silk as "the thread spun by the silk worm." He later clarified this definition by stating that thread is the fiber spun by a silk worm, put into a cocoon. He described the instant merchandise as waste from the silk cocoon. On cross-examination the witness stated that "we [presumably his firm] buy the merchandise before us as old silk waste." "Silk waste" as he understood the term is "any silk-waste material, anything that is classified as a waste." He admitted that the waste product that results from the process of spinning silk from the cocoon is known as silk waste; and that in the processes of manufacturing silk from the removal of the fiber from the cocoon to the manufacture into cloth, each one of the residues or waste products would be known as waste "if it has no commercial

value to the people that have further advanced it * * * into yarn or something like that."

The Government produced one witness, Mr. Hanf, head of J. W. Hanf & Co., importers and exporters, specializing in textile fibers, including silk wastes and other byproducts of textile fiber. This witness stated that he had been actually handling silk waste for over twenty years; that he had lived in the Orient and had seen silk produced from the silk worm through to the manufactured article; that his duties for over twenty-five years have included the buying and selling of silk wastes of all kinds to the trade or dealers; that the merchandise in suit is exactly similar to waste which he has purchased, and that it is known as a "wadding waste." He stated that he was in the Orient in the year 1919 and handled this particular material while there as part of his business, and he described the process of obtaining the merchandise as stated above.

Plaintiffs' attorney in his brief contends that this testimony is lacking in probative value for the reason that the witness based his statements upon his observations in China some sixteen years prior to the exportation of the shipments here involved. Ordinarily we would be inclined to agree with this contention that the witness' experience was too remote. However, in this case the witness had been dealing in silk wastes and silk waste fabrics for over twenty years and he stated that the instant merchandise is substantially similar to waste purchased by him, and that he has purchased thousands of pounds. It would seem that if the customs had changed during the years since the witness had made his observations in China, he would have learned of that fact in the course of his business dealings.

From the testimony and an examination of the sample in evidence we have arrived at the following conclusions. The imported article consists of what is termed wadding waste, which is a waste removed from old clothing in which it has been used as padding. Originally it consisted of silk waste, before being made into wadding or padding. No evidence has been produced as to the process to which the original silk waste was subjected in order to make it fit for wadding. Surely it must have been treated in some way, either rolled to make it flat, that is in sheets, or subjected to some other manipulation. If such process amounted to a manufacture resulting in a new article, viz, wadding, then the merchandise before us is not a waste from silk but a waste from wadding.

The collector has classified the commodity as waste not specially provided for. The presumption attaching to that classification is that he has found all the facts necessary to support such a finding. In the absence of evidence that the original silk waste had not been manufactured into something with a new name and use, from which

this waste was taken, we think it may very well be that the collector had facts before him which satisfied him that such was the case. We find that the presumption attaching to the correctness of the collector's classification has not been overcome and overrule plaintiffs' claim.

Judgment for defendant. It is so ordered.